UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**KAREN ANNE LAMSON-HOLMBERG,**

      **Plaintiff,**

**v.**                                      **Case No: 5:15-cv-342-Oc-PRL**

**COMMISSIONER OF SOCIAL
SECURITY**

      **Defendant.**

_____

## ORDER

Plaintiff appeals the administrative decision denying her application for Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

### I.    BACKGROUND

Plaintiff filed an application for SSI benefits, alleging disability beginning August 8, 2012. (Tr. 199–209, 221). The claim was denied initially, and upon reconsideration. (Tr. 129–34, 145–49). At Plaintiff's request, a hearing was held before Administrative Law Judge Robert D. Marcinkowski (the "ALJ"), who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 21–40, 46–75).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 24). At step two, the ALJ determined that Plaintiff had the following severe impairments: hypertension, thyroid disorder, obesity, an affective disorder, an anxiety disorder, and obsessive compulsive disorder. (Tr. 24).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25–28).  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant can frequently balance, stoop and kneel. The claimant can also frequently climb ramps and stairs, but must never climb ladders, ropes and scaffolds. The claimant can occasionally crouch and crawl. She must avoid concentrated exposure to extreme cold and extreme heat. She must further avoid moderate exposure to hazards, machinery and heights. The claimant can understand, remember, and carry out simple instructions. The claimant can perform simple routine tasks. She can have occasional interaction with coworkers and the general public. In order to remain on task, the claimant requires an allowance to sit for thirty minutes at a time, take a short break in order to stand and then sit again.

(Tr. 28–36).  At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work.  (Tr. 36).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform—the sedentary occupations of charge account clerk and document preparer.  (Tr. 37–38).  Thus the ALJ found that Plaintiff was not disabled from August 8, 2012, through the date last insured.  (Tr. 39).

Then, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner.  (Tr. 1–7).  With her administrative remedies exhausted, Plaintiff filed the instant appeal.  (Doc. 1).

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which

can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision.   *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).   Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.   *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   This is clearly a deferential standard.

III.   DISCUSSION

On appeal, Plaintiff raises three issues: (1) whether the RFC assessment is supported by substantial evidence, (2) whether the ALJ properly evaluated Plaintiff's credibility, and (3) whether the ALJ properly considered the side effects of Plaintiff's medication.   For the reasons explained below, I find no error.

A.  Substantial evidence supports the RFC assessment

Plaintiff first argues that the RFC assessment fails to account for her Obsessive Compulsive Disorder ("OCD").   At step two, the ALJ found that Plaintiff had the severe impairment of OCD (Tr. 24), and at step three, the ALJ found that Plaintiff had "moderate difficulties" in maintaining concentration, persistence, and pace (Tr. 27).   Then, in the RFC assessment and in the hypotheticals to the Vocational Expert, the ALJ limited Plaintiff in the following ways: Plaintiff can understand, remember, and carry out simple instructions; can perform simple routine tasks; can have occasional interaction with coworkers and the general public; and she requires an allowance to sit for thirty minutes at a time, take a short break in order to stand and then sit again. (Tr. 28, 72–73).

When, as here, the ALJ finds that a claimant has limitations as part of the Psychiatric Review Technique ("PRT") employed at steps two and three, the ALJ must account for those limitations in the RFC assessment.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011).   An ALJ may adequately account for PRT ratings by indicating that the medical evidence supports the RFC finding or otherwise implicitly accounting for the ratings.   *Winschel*, 631 F.3d at 1180 (noting that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently

accounts for such limitations"); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871–72 (11th Cir. 2011) (holding that a hypothetical limiting claimant to "simple instructions and simple tasks," sufficiently accounted for limitations in concentration, persistence and pace because, despite these limitations, the medical evidence in the record demonstrated that claimant retained the ability to follow simple instructions and complete simple tasks).   Here, there is substantial evidence relied on by the ALJ to support the mental RFC assessment, which implicitly accounted for Plaintiff's OCD. (Tr. 30–31).

First, the ALJ accorded great weight to the opinion of state agency psychologist John Thibodeau.[1]   (Tr. 34).   In a *Medical Residual Functional Capacity Assessment*, Dr. Thibodeau found that despite Plaintiff's moderate mental limitations, Plaintiff could still "perform simple, repetitive tasks, and likely has abilities to perform tasks at higher levels," and "is able to meet the basic mental demands of work on a sustained basis."   (Tr. 114).   Indeed, though Dr. Thibodeau found that Plaintiff was moderately limited in her concentration and persistence, and also moderately limited in her ability to carry out a normal workday and workweek without interruptions from psychologically based symptoms and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, the doctor still found that the "evidence suggests [that Plaintiff] has the capacity to persist at simple tasks."   (Tr. 113–14).   And as the ALJ noted, though Dr. Thibodeau cited to evidence that Plaintiff was consistently diagnosed with OCD, that evidence also showed that Plaintiff still retained the ability to think clearly.   (Tr. 34, 109).   For example, the ALJ found that Dr. Thibodeau's opinion is supported by mental status

---

[1] State agency consultants, such as Thibodeau, are highly qualified specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if supported by the evidence.  20 C.F.R. §§ 404.1527(C)(2)(i), 416.927(c)(2)(i); SSR 96-6p.

examinations that showed that Plaintiff "was oriented in all four spheres and immediate, recent and remote memories were intact."   (Tr. 34, 462, 473, 481–82, 492, 497, 505).

Likewise, the ALJ further found that other medical evidence showed that Plaintiff "was oriented in all four spheres and had both, a normal affect and mood."   (Tr. 35, 415, 422, 426, 430, 434, 438, 441).   The ALJ also indicated that despite Plaintiff's mental health problems, the record shows that she has been noncompliant with medication and refused to participate in group therapy. (Tr. 33, 494–96, 500).

Accordingly, the ALJ's mental RFC assessment, and the hypothetical posed to the Vocational Expert, sufficiently accounted for Plaintiff's mental limitations and is supported by substantial evidence.

**B.  The ALJ properly considered Plaintiff's credibility**

Next, Plaintiff argues that the ALJ failed to properly consider her credibility.   The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.   (Tr. 32–34).   I find no error.

In evaluating the extent to which a claimant's symptoms effect his or her capacity to perform basic work activities, an ALJ should properly consider all of the available evidence, including inconsistencies in the evidence, and the extent to which there are conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.   *See* 20 C.F.R. § 416.929(c)(4).

When, as here, an ALJ decides not to fully credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must

be obvious as to the credibility finding.  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011).   However, in reviewing the ALJ's decision, the "question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Id.* at 939.   Indeed, a "reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record."   *See Carter v. Astrue*, No.3:11–cv–753–J–MCR, 2012 WL 2813965, at *6 (M.D. Fla. July 10, 2012).

Here, substantial evidence supports the ALJ's credibility finding.   For example, the ALJ observed that recent progress notes reflected that Plaintiff had "no perception issues or delusions observed and thought process was distracted but organized" and that Plaintiff "was oriented in all four spheres and immediate, recent and remote memories were intact."   (Tr. 34, 462, 473, 481–82, 492, 497, 505).   The ALJ also noted instances on medication noncompliance and refusal to participate in group therapy, and that these instances "tend to suggest that the claimant's symptoms are not as extreme as presented."   (Tr. 33, 477, 494–96, 500).   Further, the ALJ noted evidence that slightly eroded Plaintiff's "credibility in both her allegations of symptomatic severity and the reasons for filing for benefits."   (Tr. 34).   This evidence includes Plaintiff's statement in a SSA *Functional Report* that her sole purpose in applying for benefits was to end her family's requests that she apply (Tr. 34, 242, 249) and that she disputed a physician's purported listing of depression (and not OCD) as Plaintiff's primary diagnosis on the grounds that Plaintiff was "trying to get disability, they have to chart correctly."   (Tr. 34, 500).

Accordingly, I submit that the ALJ articulated legitimate reasons supported by substantial evidence for not fully crediting Plaintiff's complaints of disabling limitations.   *See Robinson v. Astrue*, 365 Fed. App'x. 993, 997–98 (11th Cir. 2010) (noting that inconsistencies or conflicts

between a claimant's statements and other evidence are properly considered by the ALJ when determining the plaintiff's credibility).

### C.  The ALJ properly considered the side effects of Plaintiff's medication

Finally, Plaintiff argues that the ALJ did not consider Plaintiff's alleged medication side effects of drowsiness, loss of appetite, restlessness, fatigue, upset stomach, and a "hangover effect," along with an overall lack of medication effectiveness.   When evaluating the intensity and persistence of a claimant's alleged symptoms, the Social Security regulations direct the ALJ to consider the claimant's alleged medication side effects.   20 C.F.R. § 404.1529(c)(3)(iv) (noting that factors relevant to a claimant's alleged symptoms include the "type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"); 20 C.F.R. § 416.929(c)(3)(iv).

Though "[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability," *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), an ALJ does not have a duty to inquire into a plaintiff's medication side effects where the plaintiff is "represented at the hearing and d[oes] not allege that side effects of drugs contributed to [the plaintiff's] disability," *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985).   In other words, when "a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, we have determined the ALJ does not err in failing 'to inquire further into possible side effects.'"   *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) (quoting *Cherry*, 760 F.2d at 1191 n. 7).   And it is, of course, the plaintiff's "burden of introducing evidence to support a claim that his [or her] symptoms, including any medication side effects, render him or her disabled." *Principe v. Comm'r of Soc. Sec.*, No. 6:13-CV-1853-ORL-GJK, 2015 WL 1345311, at *5 (M.D.

Fla. Mar. 23, 2015); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).   Here, the ALJ did not err.

Plaintiff was represented at the hearing (Tr. 46) and did not then allege that her medication causes disabling side effects.   And now, even in this appeal, Plaintiff still fails to allege that any of her medication side effects rise to the level of a disabling limitation.   Thus the ALJ was not required to inquire about Plaintiff's alleged side effects, *Burgin*, 420 F. App'x at 904; *Cherry*, 760 F.2d at 1191 n. 7, and Plaintiff has not met her burden of showing that medication side effects rendered her disabled, *Ellison*, 355 F.3d at 1276; *Principe*, 2015 WL 1345311 at *5.[2]

### IV.   CONCLUSION

For the reasons stated above, the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).   The Clerk is **DIRECTED** to enter final judgment for the Commissioner and **CLOSE THE FILE**.

**DONE** and **ORDERED** in Ocala, Florida on August 16, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2] Plaintiff's argument that the ALJ should have investigated why Plaintiff is medication noncompliant is unpersuasive: the ALJ was under no duty to further investigate why Plaintiff was medication noncompliant as the ALJ did find that Plaintiff was disabled and that Plaintiff had failed to follow prescribed treatment that would have restored Plaintiff's ability to work.   *Lucas v. Sullivan*, 918 F.2d 1567, 1572 (11th Cir. 1990); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored.").